# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

STATE FARM & CASUALTY
COMPANY a/s/o THOMAS UHLEIN,

        Plaintiff,

     v.

IDC MANAGEMENT COMPANY
d/b/a M&M Services,

        Defendant.

CIVIL ACTION NO. 3:18-CV-01282

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This is an action concerning property damage arising out of a fire in June 2017 that occurred in a vacant vacation home in Tannersville, Pennsylvania, after it had been cleaned. Pending before the Court are two motions filed by Defendant, IDC Management Company d/b/a M&M Services. First, Defendant has filed a motion to preclude the Plaintiff from offering expert opinion in advance of trial in this matter, and the Court now addresses this motion brought pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595 (1993) and Federal Rule of Evidence 702, to exclude all of the expert testimony and written reports of Robert Buckley. (Doc. 33). Defendant has also filed a motion for summary judgment, submitting that it is entitled to summary judgment due to the speculative nature of Buckley's testimony. (Doc. 31). For the following reasons, the Court will deny both motions.

## I. FEDERAL RULE 702 AND EXPERT TESTIMONY

Federal courts are vested with broad inherent authority to manage their cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *See Luce v. United States,* 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.,* 723 F.2d

238, 260 (3d Cir. 1983) (noting that the court exercises its discretion to rule in limine on evidentiary issues "in appropriate cases"), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge[, *i.e.* reliability]; and (3) the expert's testimony must assist the trier of fact[, *i.e.,* fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)).

In general, the Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Fed. R. Evid. 402. Moreover, Rule 702 in

particular "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997).

First, an expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualification requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir. 1994); *Betterbox Commc'ns Ltd. v. BB Techs., Inc.,* 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials . . .").

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable. *Paoli,* 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli,* 35 F.3d at 742 (quoting *Daubert,* 509 U.S. at 590). The Court in *Daubert* noted that the assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert,* 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider,* 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert,* 509 U.S. at 591-92. Although the

applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

Finally, in performing its gatekeeping function to determine whether an expert's proffer is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983)) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

## II. DISCUSSION

### A. MOTION TO PRECLUDE TESTIMONY OF ROBERT BUCKLEY

Defendant seeks to preclude as speculative all testimony from Robert Buckley ("Buckley") that the fire was caused by an employee of the Defendant disposing smoking material into the mulch underneath the front porch of the building. (Doc. 33, at 8-10). As noted above, under *Daubert* and Rule 702, an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). Buckley, according to Defendant, bases his opinion on unsupported speculation. (Doc. 33); *See Paoli*, 35 F.3d at 742.

Defendant grounds its argument in the presence of alternative possibilities as to the cause of the fire. (Doc. 33, at 8). Specifically, Defendant submits that Buckley cannot eliminate neighborhood fireworks, blown debris from a nearby fire, or smoking materials from someone else walking near the property as causes of the fire. (Doc. 33, at 7).

Additionally, Defendant states that Buckley "has no idea what happened" on the premises of the property during the four-hour window between when the Defendant finished cleaning and when the fire occurred. (Doc. 33, at 6). The fire started in an area accessible to the public, there were other individuals present in the neighborhood, the mulch where the fire originated smoldered for an unknown period of time, and the employees of Defendant, though known smokers, testified that they did not smoke outside the property in question. (Doc. 33, at 5-7). Further, no physical remnants of smoking materials were recovered at the scene of the fire. (Doc. 33, at 4). Defendant concludes that Buckley's inability to eliminate fireworks, blown debris, or smoking materials from someone other than Defendant as causes means that his opinion is "speculation and conjecture." (Doc. 33, at 8) (citing *Lanza v. Poretti*, 537 F.Supp. 777, 785 (E.D. Pa. 1982).

To ask an expert to eliminate all hypothetical causes, no matter how unlikely, before being provided the opportunity to render an opinion on what he or she believes most probable would be an exercise in futility. *See Heller v. Shaw Industries, Inc.,* 167 F.3d 146, 156 (3d Cir. 1999). Rule 702 requires only that an expert provide *some* explanation for ruling out plausible alternative causes as the sole cause of the incident. *Heller,* 167 F.3d at 156 (emphasis added). "To require the experts to rule out categorically all other possible causes for an injury would mean that few experts would ever be able to testify…" *Heller,* 167 F.3d at 156 (quoting Daniel J. Capra, *The Daubert Puzzle,* 32 Ga. L. Rev. 699, 728 (1998)).

In *Heller*, when confronted with plausible alternative causes of the plaintiff's illness, the expert medical witness "did not offer detailed explanations for why he concluded that these were not the causes of plaintiff's illness, but his responses … certainly are more than '*no* explanation'" *Heller,* 167 F.3d at 156 (emphasis in original). The court went on to say that the

district court erred in requiring the witness to rule out all alternative possible causes. *Heller,* 167 F.3d at 156 (quotation omitted). If the expert's "opinion on causation has a factual basis and supporting scientific theory that is reliable, it should be admitted." *Heller,* 167 F.3d at 157.

Where a fire investigator identifies the cause of fire in terms of probabilities (as opposed to mere possibilities) by eliminating all but one reasonable potential cause, such testimony is highly probative. *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138 (3d Cir. 1983); *citing Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 247 (D.C.Cir.1969); *Lanza v. Poretti*, 537 F.Supp. 777, 785–786 (E.D.Pa.1982); *see also* Annot., 88 A.L.R.2d 230, §§ 5, 8, & 9 (1963). Federal courts also recognize that when smoking causes a fire, the direct evidence, or remnants, are highly likely to dissolve. *See Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 247 (D.C. Cir. 1969). Therefore, direct physical evidence is often hard to find and investigators must rely on "other, direct, evidence of smoking in the premises shortly before the fire began." *Gichner*, 410 F.2d at 247.

Considering the methods Buckley uses in developing his 'probable cause,' the undersigned concludes that he has 'good grounds' for his belief and does not resort to 'speculation and conjecture.' *See Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). Unlike the expert in *State Farm Fire & Cas. Co. v. Steffen*, cited by the Defendant, Buckley is able to identify the first fuel ignited (mulch underneath the front porch), and has a significant amount of evidence to support his theory that an employee of the Defendant started the fire: five smokers present on the property, testimony that they smoked outdoors at worksites, and close proximity of these employees to the known location of the fire's origin. (Doc. 37-4, at 5); *see State Farm Fire & Cas. Co. v. Steffen,* 948 F. Supp. 2d 434, 442-43 (E.D. Pa. 2013). The lack of direct physical evidence of a cigarette or other smoking material does not preclude

Buckley from rendering his opinion. *See Gichner*, 410 F.2d at 247; *cf. State Farm Fire & Cas. Co. v. Holmes Prod.*, 165 F. App'x 182, 186 (3d Cir. 2006) (expert testimony unsupported by *any* scientific analysis or methodology was unsupported speculation).

Buckley uses physical evidence and logical reasoning to develop a theory as to the probable cause of the fire. (Doc. 37-4). Buckley employs physical evidence including patterns and effects left by the fire, arc mapping, and the physics and chemistry of fire initiation and growth. (Doc. 37-4, at 5-6). Buckley also employs circumstantial evidence, made known to him through deposition testimony, about the people who were present at the property on the day of the fire. (Doc. 37-4, at 7). Finally, Buckley employs logical reasoning to connect the physical evidence and the circumstantial evidence, combining the two to advance a theory. (Doc. 37-4, at 7). He calls this theory "the most probable cause." (Doc. 37-4, at 8).

Buckley also satisfies his duty to address alternative causes. This duty calls for him to give *some* explanation in ruling out plausible alternative causes. *Heller*, 167 F.3d at 156. Buckley, when confronted with the idea that fireworks caused the fire, explains that there were no reports of fireworks being heard or seen in the area that day and he has no reason to believe there were. (Doc. 36-11, at 82-83, 87). When confronted with the idea that burning debris from outside the property was blown onto the property and started the fire, Buckley explains that his experience is that "just about all mulch fires I had were cigarettes," that paper would burn up quickly in the wind while cigarettes take longer to burn, and that there is no reason for him to believe that anything else was burning in the vicinity of the house on that day. (Doc. 36-11, at 77-79). When confronted with the idea that someone else walking by the house deposited smoking materials, Buckley explains that the street and sidewalk at that location is approximately 50 feet from where the fire originated, leading him to believe that

the smoking material was not deposited by someone walking on the sidewalk, and that there was no data to suggest that happened. (Doc. 36-11, at 85, 87). Buckley's testimony provides some explanation for dismissing plausible alternative causes. *See Heller*, 167 F.3d at 156. Buckley eliminates electrical wiring and equipment as a cause due to none being found under the porch floor (where the fire indisputably started). (Doc. 37-4, at 6). Buckley also eliminates an intentionally set fire due to the pattern with which the fire burned. (Doc. 37-4, at 6).

The undersigned concludes that a jury could find the evidence supports Buckley's conclusion that the fire was caused by the Defendants depositing smoking material on the property. His consideration of the direct and circumstantial evidence, along with his explanation for dismissing plausible alternative causes, raises his theory of causation to a level of belief stronger than unsupported speculation. *See Heller*, 167 F.3d at 156. Further, Buckley's testimony falls well within the ambit of Fed. R. Evid. 702 because it is helpful to the trier of fact in determining the truth in a difficult factual context—the origin of a fire. Helpfulness is the touchstone of Rule 702, and Buckley's testimony is helpful because of his special knowledge and skill concerning the origins and causes of fires. *See Breidor*, 722 F.2d at 1139. It is up to a jury to determine the credibility and weight of Buckley's testimony. *Breidor*, 722 F.2d at 1138-39. As such, Defendant's motion to preclude Buckley's testimony should be denied.

B. MOTION FOR SUMMARY JUDGMENT

In addition to moving to preclude Buckley's testimony as speculative, Defendant moves for summary judgment in its favor on the basis that Buckley's testimony should be precluded. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

As the basis for Defendant's motion for summary judgment is the speculative nature of Buckley's testimony, and having determined that its motion to preclude the testimony should be denied, the Court finds no basis for granting summary judgment, and therefore finds that its motion for summary judgment should be denied.

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to preclude Buckley's testimony as speculative (Doc. 33) and Defendant's motion for summary judgment (Doc. 31) will be denied. An appropriate Order will follow.

**Dated: October 25, 2019**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**